UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARNOLD V. HENRY,

                    Plaintiff,                           Civil Action No. 24-10595

v.                                                       Linda V. Parker
                                                         United States District Judge

ERIN PARR-MIRZA, *et al*.,                               David R. Grand
                                                         United States Magistrate Judge

                    Defendants.
_____/

**REPORT AND RECOMMENDATION TO DENY
DEFENDANT SCHASCHKO'S MOTION FOR EARLY SUMMARY
JUDGMENT ON THE BASIS OF EXHAUSTION (ECF No. 43)**

On February 3, 2025, defendant Bruce Schaschko, R.N. ("Schaschko") filed a

Motion for Early Summary Judgment on the Basis of Exhaustion.  (ECF No. 43).  On

March 26, 2025, plaintiff Arnold V. Henry ("Henry"), an incarcerated person, filed a

response.[1]  (ECF No. 50).  Schaschko filed a reply brief on April 1, 2025.  (ECF No. 51).

Pursuant to 28 U.S.C. § 636(b), all pretrial matters have been referred to the

undersigned.  (ECF No. 16).  Generally, the Court will not hold a hearing on a motion in a

---

[1] In his reply brief, Schaschko argues that Henry's response is untimely.  This argument is without
merit.  On March 4, 2025, the Court entered an order granting Henry's motion for extension of
time, specifically stating that Henry's response brief was due on or before March 24, 2025.  (ECF
No. 49, PageID.464).  Schaschko acknowledges that Henry's brief was dated March 17, 2025
(ECF No. 51, PageID.521), and although difficult to decipher, it appears it was postmarked March
19, 2025 (ECF No. 50, PageID.519).  Although this filing was not received by the Court until
March 26, 2025, pursuant to the prisoner mailbox rule, Henry's response brief was timely filed.
*See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (the prisoner mailbox rule creates a
"relaxed filing standard" where a *pro se* prisoner's filing is deemed filed when it is handed over to
prison officials for mailing to the court … "with an assumption that, absent contrary evidence, a
prisoner does so on the date" he signed the filing).

civil case in which a party is in custody. *See* E.D. Mich. LR 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Schaschko's Motion for Early Summary Judgment on the Basis of Exhaustion **(ECF No. 43)** be **DENIED**.

## II.    REPORT

### A.    Background

At the time of the filing of his complaint, Henry was a Michigan Department of Corrections ("MDOC") prisoner confined at the Macomb Correctional Facility ("MRF") in Lenox Township, Michigan. He brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights. (ECF No. 1). Named as defendants in this action were MRF Health Unit Manager Erin Parr-Mirza, Angela Joseph, M.D., RN Schaschko, and John Doe, an unidentified Corizon corporate office employee.[2] (*Id.*, PageID.2).

In his complaint, Henry alleges that, beginning around December 15, 2022, he was not provided with his blood pressure medication, Atenolol, on a daily basis, as prescribed. (*Id.*, PageID.3). He further alleges that, on January 5, 2023, he complained to Schaschko that he had not been receiving this medication. (*Id.*). Attached to Henry's complaint was his salient Step I grievance, MRF-23-01-0096-28e ("MRF-96"). (ECF No. 1, PageID.7).

---

[2] Henry's claims against defendants Parr-Mirza and Joseph have been dismissed. (ECF Nos. 39, 40, 46). Thus, Schaschko and John Doe are the sole remaining defendants in this matter.

In MRF-96, Henry asserts:

> At evening med pass [on January 5, 2023], prisoner informed
> Saschsko (sic) that he had [been] experiencing headaches, vision
> changes and difficulty breathing.  RN [Schaschko] stated, "your meds
> have been ordered, step away from the med window.  I will call you
> out to check your [blood pressure] when I'm done here."   RN
> Saschsko (sic) never showed.

(*Id.*).  According to Henry, the next day, January 6, 2023, he was rushed to Health Care,
where his blood pressure was 211/103.  (*Id.*, PageID.3).  He then alleges that RN Leonard
"may have saved [his] life" when she responded rapidly and administered nitroglycerin.
(*Id.*).  Henry alleges that medical personnel other than Schaschko attempted to perform an
EKG but were unable to operate the machine; as a result, EMS was called and Henry was
transported to the hospital.  (*Id.*, PageID.4).  He was hospitalized for three days before
being returned to MRF on January 9, 2023.  (*Id.*).  Henry further alleges that, even after he
returned to MRF, he was not provided with Atenolol until January 13, 2023.   (*Id.*,
PageID.5).  According to Henry, as a result of his deprivation of this blood pressure
medication, he "will suffer long term heart and kidney damages."  (*Id.*, PageID.7).

Schaschko now moves for summary judgment, arguing that Henry failed to properly
exhaust his administrative remedies against him before filing this lawsuit.  (ECF No. 43).

## B.    Standard of Review

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows
that there is no genuine dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty.
Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material

if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

### C. Analysis

In his motion, Schaschko argues that summary judgment is warranted on Henry's claim against him because Henry failed to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF No. 43). For the reasons set forth below, the Court disagrees.

4

### 1.    The PLRA's Exhaustion Requirement

Under the PLRA, a prisoner may not bring an action, "under [§ 1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court.  *See Woodford*, 548 U.S. at 89.  The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93.  Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90.  Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

### 2.    The MDOC's Exhaustion Procedures

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200.  In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy").  (ECF No. 43-1).  A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct.  (*Id.* at ¶

C).  The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance.  (*Id*. at ¶¶ Q, W).  If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due.  (*Id*. at ¶ DD).  If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III.  (*Id*. at ¶ HH).  Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps.  (*Id.* at ¶ C).

### 3.    *Henry Has Raised a Genuine Issue of Material Fact as to Whether He Properly Exhausted His Claim Against Schaschko*

In his motion, Schaschko first argues that Henry did not properly exhaust his Eighth Amendment claim against him because Henry pursued, through Step III, only one grievance arising out of MRF – MRF-96 – and that grievance "**does *not* direct[ly] [sic] name, reference, or even peripherally involve Movant SCHASCHKO**[.]"[3]  (ECF No. 43, PageID.387) (emphasis in original).  This argument lacks merit as its factual premise is simply incorrect.

It is true that in order to properly exhaust a claim against a defendant under the Policy, a plaintiff must put the defendant on notice that he is challenging his conduct by naming him in the grievance.  *See, e.g., Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th

---

[3] Schaschko provides a copy of Henry's "MDOC Prisoner Step III Grievance Report," as well as the underlying grievance-related documents, which confirm that MRF-96 is the only grievance arising out of MRF that Henry pursued to Step III.  (ECF No. 43-2).

Cir. 2010) ("Under the [MDOC's] procedural rules, inmates must include the … names of all those involved in the issue being grieved in their initial grievance.") (internal quotations omitted); *Pasley v. Maderi*, No. 13-13251, 2014 WL 5386914, at *4 (E.D. Mich. Sept. 15, 2014) (recognizing that the Policy requires the names "of all those involved in the issue being grieved" to be included in the Step I grievance and dismissing those defendants who were not so named) (internal quotations omitted).  Here, however, a review of Henry's Step I grievance reveals that he did just that.

As discussed above, *see supra* at 2-3, at Step I of MRF-96, Henry explicitly challenged Schaschko's conduct, alleging, in full:

> On 1-5-23 prisoner at noon med call complained that he had not received his [blood pressure ("BP")] medications in more than <u>a week</u>. **At evening med pass, prisoner informed Saschko (sic) that he had [been] experiencing headaches, vision changes and difficulty breathing.   RN [Schaschko] stated, "your meds have been ordered, step away from the med window.  I will call you out to check your BP when I'm done here."  RN Saschko (sic) never showed.**  The following morning, 1-6-23 prisoner's BP was taken by an unnamed medical person.  BP registered at approx. 211/103.  A [corrections officer ("C/O")] escort was ordered but never showed as prisoner struggled to breathe.   Concern[ed] C/O Lebron broke protocol and rushed prisoner to H.S.   Prisoner was triaged and administered nitro tablets twice.  An E.K.G. was attempted but failed equipment and lack of knowledge prevented readings.   Because prisoner was in critical condition and needed further assistance, EMS was called.  **Prisoner was transported and hospitalized for (3) days simply because his med for BP were (sic) not available to him. Prisoner will suffer long term heart and kidney damages.**

(ECF No. 43-2, PageID.416) (underlining in original; bold added).[4]  Thus, Schaschko is

---

[4] Elsewhere in his Step I grievance, Henry explicitly stated his belief that Schaschko "violated MDOC policies …."  (ECF No. 43-2, PageID.416).

simply incorrect when he asserts that MRF-96 "**does _not_ direct[ly] [sic] name, reference, or even peripherally involve Movant SCHASCHKO**" and that he "was _not_ a subject of MRF-96, as [Henry] did _not_ contest Defendant SCHASCHKO'S conduct, but rather complained of the conduct of _other_ the (sic) individuals who provided him medical care on or around January 5, 2023." (ECF No. 43, PageID.387, 394) (emphasis in original).  Again, it is readily apparent from the face of Henry's Step I grievance that he was specifically challenging _Schaschko's_ failure to provide him with his blood pressure medication and take his blood pressure on January 5, 2023.  As such, this argument fails.[5]

Schaschko also argues that MRF-96 did not exhaust any claims against him because "even if it _had_ mentioned or involved [him], it was rejected as untimely and defective during the grievance process and was never advanced through Step III." (ECF No. 43, PageID.395) (emphasis in original).  Specifically, Schaschko argues that, under the Policy:

> … a grievant _must_ file the Step III appeal within ten business days of receipt of the Step II response.  MRF-96 was returned to [Henry] on May 12, 2023 – which made it due at Step III on May 26, 2023.  But MRF-96 was not received until June 3, 2023, over a week later.  As

---

[5] Schaschko also argues that his "involvement as the Step I reviewer for MRF-96 underscores the fact that he was _not_ the subjects of the grievance under [the Policy]." (ECF No. 43, PageID.394) (emphasis in original) (citing ECF No. 43-1 at ¶ V ("Prisoners and staff who may be involved in the issue being grieved shall not participate in any capacity in the grievance investigation, review, or response, except as necessary to provide information to the respondent.")).  This argument is also factually flawed.  It is clear from the signatures at the bottom of the form that the "reviewer" of MRF-96 at Step I was defendant Parr-Mirza, not Schaschko.  (ECF No. 43-2, PageID.416).  And, when asked at the top part of MRF-96 what attempt he made to resolve the issue prior to writing the grievance, Henry indicated that he "discussed his medical concerns with RN Saschko (sic)" but Schaschko "did not follow up on his commitment." (_Id._).  This is entirely appropriate, as the Policy provides that "[p]rior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved …." (ECF No. 43-1 at ¶ Q).  Thus, this also makes clear that it was Schaschko's actions that Henry was grieving, as Henry viewed him as the "staff member involved."

such, MRF-96 was **rejected as untimely** under [the Policy].

(*Id.*) (emphasis in original) (citing ECF No. 43-1 at ¶ J(5)).  It is true, broadly speaking, that a grievance that has been explicitly rejected for a procedural reason (such as timeliness) – and therefore not decided on its merits – is unexhausted.  *See Alger v. Campbell*, No. 24-11831, 2025 WL 1372982, at *5 (E.D. Mich. Apr. 24, 2025) (citing cases).  Here, though, while the Step III grievance response does state that MRF-96 was "rejected as untimely" (ECF No. 43-2, PageID.412), there are sufficient factual issues surrounding this rejection to render summary judgment inappropriate.

As set forth above, the Step III grievance response states that MRF-96 was "rejected as untimely filing (sic) **<u>at Step II</u>**."  (*Id.*) (emphasis added).  However, MRF-96 was *not* rejected as untimely at Step II; rather, it was addressed on the merits at that step (and, indeed, the MDOC acknowledged that it was "the responsibility of Health Care staff to ensure that medication orders are renewed in a timely manner" to ensure that medications are "administered as ordered and without interruption."  (*Id.*, PageID.415).  Courts have recognized that "[i]t is unfair for Defendants to argue that a plaintiff failed to exhaust grievance remedies based upon a grievance rejection on procedural grounds asserted for the first time at Step III of the process, where the grounds were previously waived."  *Adams v. Poupard*, No. 2:23-cv-47, 2024 WL 5125814, at *10 (W.D. Mich. Nov. 22, 2024) (citing cases).  In *Sedore v. Greiner*, No. 19-10311, 2020 WL 8837441 (E.D. Mich. Sept. 21, 2020), for example, the Court addressed a similar situation, in which the prisoner plaintiff's grievance was denied on the merits at Steps I and II, but then rejected at Step III for procedural reasons (i.e., grieving multiple issues).  Rejecting the defendants' argument that

the grievance was unexhausted, the Court explained:

> As a matter of policy, it would be unfair to allow prison officials to address the merits of a prisoner's grievance, but then reject the grievance for a procedural error that existed throughout the process at the final step, where the prison official has the last word.  The more reasonable approach to take here is that in cases such as this, the prison should be deemed to have waived the defect.  Put another way, "when MDOC officials shift their rationale in denying a grievance from a purely merit-based determination to a procedural defect at the final step in the grievance process, the defect has been waived, thus exhausting the claim for purposes of federal suit." *Raper v. Controneo*, 2018 WL 2928188, at *3 (W.D. Mich. June 12, 2018); *see also Abbruzzino v. Hutchinson*, 2009 WL 799245 (E.D. Mich. Mar. 24, 2009) (Holding that the prison could not rely on an alleged procedural defect at Step III where it addressed the merits of the grievance at Steps I and II).  Accordingly, I find that because MDOC prison officials waited until Step III to raise the procedural defect, the defect has been waived.  This grievance is fully exhausted.

*Sedore*, 2020 WL 8837441, at *7.  Here, then, where MRF-96 was addressed on the merits at Steps I and II, and only subsequently rejected at Step III for being untimely (allegedly at Step II of the grievance procedure), the Court finds that the prison officials waived their right to assert this procedural defect.  *Id.*

For all of these reasons, Schaschko has not established that Henry failed to properly exhaust his Eighth Amendment claim, and summary judgment should be denied.[6]

## III.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Schaschko's Motion

---

[6] In his response to Schaschko's motion, Henry asserts that MRF-96 was not untimely filed at Step II, explaining in detail exactly when he requested the Step II appeal form, when that form was received, and when he submitted it, alleging that any delay in its receipt was not attributable to him. (ECF No. 50, PageID.473-74).  Because the Court finds that MRF-96 was properly exhausted for other reasons, it need not address in detail Henry's timing-related arguments.

for Early Summary Judgment on the Basis of Exhaustion **(ECF No. 43)** be **DENIED**.


Dated: May 21, 2025                                        s/David R. Grand
Ann Arbor, Michigan                                     DAVID R. GRAND
                                                                         United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 21, 2025.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager

12